UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
KENNETH BIBILONI,                                :
                                                 :
                    Plaintiff,                   :
                                                 :          **INITIAL REVIEW**
         -against-                               :          **ORDER RE:**
                                                 :          **COMPLAINT**
DOE, et al.,                                     :
                                                 :          24-CV-1583 (VDO)
                    Defendants.                  :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Kenneth Bibiloni, a sentenced inmate[1] incarcerated at Corrigan Correctional Center, filed this case *pro se* pursuant to 42 U.S.C. § 1983 against six defendants, Dr. John Doe, CHN Stephanie, CSN Jones, Lieutenant Roberts, Officer Zack, and Lieutenant Dawson. Plaintiff asserts claims for deliberate indifference to medical needs and denial of due process. He seeks damages and injunctive relief. Plaintiff has named Defendants Roberts, Dawson, and Zack in their individual capacities only and Defendants Doe, Jones, Stephanie in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion

---

[1] Throughout the complaint, Plaintiff refers to himself as a pretrial detainee. However, information on the Department of Correction website shows that he was sentenced on February 1, 2024, the same day he was admitted to the custody of the Department of Correction. *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=430865 (last visited Nov. 4, 2024). This status is confirmed by information on the Connecticut Judicial Branch website showing that Plaintiff was found guilty of assault in the second degree on November 9, 2023, and was sentenced to a term of imprisonment of two years on February 1, 2024. *See* Case No. UWY-CR-19-0458303-T, www/jud2/ct/gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=725d6765-143d-4356-98d0-54cc15c42ec7 (last visited Nov. 4, 2024). The Court considers Plaintiff a sentenced inmate in this Order.

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I.   **FACTUAL BACKGROUND**

The incidents underlying this action occurred while Plaintiff was confined at New Haven Correctional Center and all Defendants are alleged to work there. On July 8, 2023, before he entered Department of Correction ("DOC") custody, Plaintiff suffered a gunshot wound near his groin. ECF No. 1 ¶ 8. Plaintiff did not seek medical treatment or report the gunshot wound; instead, he self-treated and self-medicated. *Id.* ¶ 9.

Plaintiff entered DOC custody on February 1, 2024. *Id.* ¶ 10. During medical intake, Plaintiff reported the gunshot wound and associated pain but was not taken seriously because he did not seek medical treatment. *Id.* ¶ 11. No treatment was provided that day. *Id.* ¶ 12.

In February 2024, Plaintiff submitted three inmate requests complaining about his pain and the fact that climbing to the top bunk aggravated the pain. *Id.* ¶ 13. He was called to the medical unit on April 18, 2024. *Id.* ¶ 14. Although he explained about the pain and difficulty accessing the top bunk, nothing was done. *Id.*

On February 15, 2024 or February 20, 2024, a fire was set in East Dorm, Plaintiff's housing unit. *Id.* ¶ 15. When correctional officers used the fire extinguisher, a yellow substance came out of the extinguisher. *Id.* Since then, Plaintiff has been experiencing shortness of breath. *Id.* ¶ 16.

Plaintiff continued to submit inmate requests, now complaining of both groin pain and

shortness of breath but was ignored. *Id.* ¶ 17. Plaintiff has not been seen for any of his medical complaints. *Id.* ¶ 19. Defendant Stephanie stated that Plaintiff failed to inform staff about his medical issues, but Plaintiff denied this. *Id.* ¶ 22.

On June 6, 2024, Plaintiff was seen by Defendant Doe and recounted his complaints of shortness of breath and pain from the gunshot wound. *Id.* ¶ 23. Defendant Doe prescribed an asthma pump to address the shortness of breath. *Id.* ¶ 24. However, Defendant Doe refused to examine the gunshot wound because Plaintiff had not gone to the hospital and only prescribed ibuprofen for Plaintiff's pain. *Id.* ¶ 25.

On July 12, 2024, Defendants Dawson, Roberts, and Zack escorted Plaintiff to restrictive housing on a charge of Security Risk Group ("SRG") affiliation. *Id.* ¶ 30. He did not receive a disciplinary charge for SRG affiliation. *Id.* ¶ 31. Defendants Dawson, Roberts and Zack told Plaintiff he was being considered for SRG affiliation because he "had gang politic on my E-message." *Id.* ¶ 32. These defendants also stated there was a phone transcript showing gang activity and a photograph of a barber shop. *Id.* ¶¶ 33-34.

Before the hearing, Defendants Dawson, Roberts, and Zack told Plaintiff they would make sure he was found guilty. *Id.* ¶ 36. No evidence was shown to Plaintiff at the hearing, and he did not receive the SRG Membership Hearing Notification form. *Id.* ¶ 37.

SRG inmates have limited phone calls per day and limited commissary access. *Id.* ¶ 41. They are denied electronics and may have visits only from immediate family. *Id.* Plaintiff alleges that SRG inmates are denied proper medical care and are subject to strategic lockdowns and shake downs. *Id.*

## II. LEGAL STANDARD

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a

prisoner seeks redress from a government entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (per curiam) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g., Wynder v. McMahon*, 360 F.3d 73, 79

4

n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

### III.    DISCUSSION

Plaintiff asserts three federal claims, two Eighth Amendment claims for deliberate indifference to medical needs relating to his gunshot wound and shortness of breath, and a Fourteenth Amendment due process claim regarding his classification as an SRG member. He also asserts supplemental state law claims for medical malpractice and negligence.

#### A.    Official Capacity Claims

Plaintiff names Defendants Doe, Stephanie, and Jones in both their individual and official capacities. To the extent Plaintiff seeks damages from these Defendants in their official capacities, the request is denied. As state employees, claims for damages against Defendants in their official capacities are barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Further, the only injunctive relief Plaintiff seeks is release from restrictive housing and return to general population. As this request related to the due process claim, which is not asserted against these Defendants, there is no cognizable basis for asserting claims against

Defendants Doe, Stephanie, and Jones in their official capacities.

All official capacity claims are dismissed pursuant to 28 U.S.C. § 1915A(b).

## B.     Deliberate Indifference to Medical Needs

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, Plaintiff must present evidence of sufficiently harmful acts or omissions by a prison official. *See Estelle*, 429 U.S. at 104-06. The prison official must have intended to deny or unreasonably delay access to necessary medical care, or to wantonly inflict unnecessary pain. *See id.* However, "not every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." *Daniels v. Murphy*, No. 3:11-cv-286(SRU), 2014 WL 3547235, at *8 (D. Conn. July 17, 2014) (citation and brackets omitted).

To state a claim for deliberate indifference to a serious medical need, Plaintiff must satisfy both objective and subjective components. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995). To meet the objective component, Plaintiff "must show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). When determining whether a medical need is sufficiently serious, the court considers factors including whether "a reasonable doctor or patient would find [the condition] important and worthy of comment"; whether the condition "significantly affects an individual's daily activities"; and whether the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations

6

omitted). If the court determines that Plaintiff was deprived of medical care, it must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citation omitted). If the prisoner was completely deprived of medical care, the courts "examine whether [his or her] medical condition is sufficiently serious." *Id*. (citation omitted). Where the prisoner received medical treatment but complains that it was somehow inadequate, "the seriousness inquiry is narrower." *Id*. The court must determine "whether the inadequacy in the medical care is sufficiently serious." *Thompson v. Recette*, 519 F. App'x 32, 34 (2d Cir. 2013) (summary order).

Under the subjective prong of the deliberate indifference test, a prison official must have been actually aware that his or her actions or inactions would cause a substantial risk of harm to the inmate. *See Salahuddin*, 467 F.3d at 279-80 (citation omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id*. at 280. Recklessness requires more than merely negligent conduct. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim," and that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703. Medical malpractice "may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019).

### 1.    Gunshot Wound

Plaintiff alleges that he suffered a gunshot wound near his groin in July 2023, seven months before he was admitted to DOC custody, but never sought medical attention for the

7

wound. When he entered DOC, Plaintiff sought treatment for the wound and thereafter complained that climbing to the top bunk cause him pain. In April 2024, Plaintiff was called to the medical unit, but his complaints of pain were not addressed. He submitted multiple requests for treatment, but Defendants Stephanie and Jones ignored his requests. In June 2024, Dr. Doe prescribed ibuprofen for the pain but refused to examine the wound.

For purposes of initial review, the Court assumes that Plaintiff's complaints of constant pain aggravated by climbing to the top bunk constitute a serious medical need. Plaintiff alleges that he informed each of these three Defendants, Stephanie, Jones, and Doe, about his condition and none provided an examination or any treatment. Based on the current record, the Court cannot determine whether any of these Defendants were subjectively reckless in dealing with Plaintiff. Thus, the Court will permit this claim to proceed for further development of the record. As the Court permits the deliberate indifference claim to proceed to service, it will allow the supplemental state law claims of medical malpractice and negligence in dealing with the gunshot wound to proceed as well.

### 2. Shortness of Breath

Plaintiff alleges that he began experiencing shortness of breath immediately after the fire extinguisher was deployed in his housing unit. In the May 14, 2024 inmate request, however, he states that he had no symptoms immediately following deployment of the fire extinguisher "but as some time passes, I've been having difficulty breathing." Doc. No. 1 at 19. Submitted documents show that, on June 6, 2024, Plaintiff was scheduled to be seen by a doctor for shortness of breath. *Id*. at 22. He was provided an inhaler. *Id*. at 39. As Plaintiff received treatment for this condition and does not allege that this treatment was inadequate, his claim is for a delay in treatment rather than a denial of treatment.

When the deliberate indifference claim is based on a delay in treatment, "the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for [these] purposes." *Id*. (citing *Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998)). "The absence of adverse medical effects or demonstrable physical injury is one ... factor that may be used to gauge the severity of the medical need at issue. Indeed, in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of harm." *Id*. at 187 (citations omitted).

Thus, the Court must focus on that delay, the alleged inadequacy of the medical treatment, to determine whether the delay was significantly serious. Plaintiff alleges no facts suggesting that his condition worsened during the time that treatment was delayed. Thus, he alleges no facts supporting a plausible deliberate indifference claim based on shortness of breath and the claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

C.  **Due Process**

Plaintiff contends that he was denied due process in connection with his designation as an SRG member. Although Plaintiff argues that he was not issued a disciplinary report, an inmate may be classified as an SRG member without receiving a disciplinary report for SRG affiliation. *See* Department of Correction Administrative Directive 6.14(7) (describing procedures for designating an inmate as an SRG member with and without issuance of a disciplinary report for SRG affiliation), www.portal.ct.gov/doc/ad/ad-chapter-6 (last visited

Nov. 5, 2024); *Woolard v. Santiago*, No. 3:19CV1256(VLB), 2020 WL 2079533, at *7 (D. Conn. Apr. 30, 2020) (inmate may be designated an SRG member with or without a disciplinary charge of SRG affiliation).

Plaintiff alleges that he was denied procedural due process in connection with his SRG designation. When considering a procedural due process claim, the Court evaluates the procedures used by the hearing officer to reach his decision. *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017). The procedural protections required depend on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987).

As no disciplinary charge was involved, the hearing was an administrative or classification proceeding. At an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charges with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). In addition, due process requires that the decision be supported by "some evidence." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). While an impartial hearing officer is a due process requirement for a disciplinary hearing, it is not included in the due process protections for an administrative hearing.

On July 12, 2024, Plaintiff was placed in administrative detention pending the SRG hearing and received notice of his placement and the purpose that same day. Doc. No. 1 at 9. Plaintiff alleges that Defendants Dawson, Roberts, and Zack told him the reasons he was suspected of SRG membership, but states that he was not provided the Security Risk Group Hearing Notification, form CN 61401, mentioned in the directive. *Id.* ¶¶ 33-34, 39. In his appeal, Plaintiff acknowledged that he had the assistance of an advisor at the hearing and that he requested no witnesses. *Id.* at 36. Thus, he was afforded notice and an opportunity to present

10

his views, satisfying the due process requirements for an administrative hearing.

Although Plaintiff alleges that Defendants did not comply with the requirements in the directive, the failure to do so, without more, is not sufficient to state a section 1983 claim. *See Holcomb v. Lykens*, 337 F.3d 217, 224-25 (2d Cir. 2013) (holding that a state corrections directive did not create a liberty interest protected by the Due Process Clause); *Jackson v. Boucaud,* No. 9:08-CV-1373(TJM/DEP), 2009 WL 6066799, at *8 (N.D.N.Y. Dec. 31, 2009) (failure to follow prison directive insufficient to state claim for denial of substantive or procedural due process).

Plaintiff fails to allege facts supporting a Fourteenth Amendment due process violation. Thus, the claim against Defendants Dawson, Roberts, and Zack is dismissed pursuant to 28 U.S.C. ¶ 1915A(b)(1).

### IV. CONCLUSION

The due process claim against Defendants Dawson, Roberts, and Zack and the claim for deliberate indifference to medical needs regarding Plaintiff's claim of shortness of breath against Defendants Doe, Stephanie, and Jones are DISMISSED pursuant to 28 U.S.C. §1915A(b)(1). As Plaintiff's request for injunctive relief relates only to the due process claim, it is dismissed as well.

The case will proceed on the Eighth Amendment claim for deliberate indifferent to medical needs relating to Plaintiff's pain from the gunshot wound against Defendants Doe, Stephanie, and Jones in their individual capacities for damages. Plaintiff's state law claims for malpractice and negligence also will proceed against Defendants Doe, Stephanie, and Jones.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1)  If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Defendants Doe, Stephanie, and Jones in their individual capacities only, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **November 27, 2024**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants named above in their individual capacities as described above.

(2)  Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim or to proceed against any Defendant in his official capacity for injunctive relief, he may file an amended complaint by **November 27, 2024**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **November 27, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is

not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

Hartford, Connecticut
November 12, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge