UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x
KENNETH BIBILONI,                                    :
                                                     :
                        Plaintiff,                   :
                                                     :
        v.                                           :        3:24-CV-01583 (SFR)
                                                     :
CHN STEPHANIE, CSN JONES, and DOCTOR                 :
KWAME ACHEAMPONG,                                    :
                                                     :
                        Defendants.                  x
-------------------------------------------------------------

**OMNIBUS ORDER & MEMORANDUM**

Plaintiff Kenneth Bibiloni has brought this action under 42 U.S.C. § 1983 against

Defendants alleging that they acted with deliberate indifference to his medical needs in

violation of the Eighth Amendment[1] while he was serving a sentence[2] at New Haven

Correctional Center ("New Haven CC") in the custody of the Connecticut Department of

Corrections ("DOC"). Compl., ECF No. 1. Following initial review of Bibiloni's Complaint,

the Court ordered Bibiloni's deliberate indifference claims pertaining to his gunshot wound,

as well as state law claims for negligence and medical malpractice, to proceed against

Defendants Head Nurse Stephanie CHN, Supervisor Nurse Jones CSN, and Dr. Kwame

---

[1] Bibiloni also brought other claims against additional defendants, but these claims and defendants
were dismissed on initial review of Bibiloni's Complaint. *See* Initial Review Order, ECF No. 20.

[2] I may take judicial notice of state court records. *Velasco v. Gonclavez*, No. 3:21-cv-1573 (MPS),
2022 WL 19340, at *2 n.2 (D. Conn. Jan. 3, 2022). Bibiloni was convicted of a felony in
Connecticut State Court and sentenced on February 1, 2024. *See* State of Connecticut Judicial
Branch,       Nos.       UWY-CR19-0458383-T,       U04W-CR20-0490940-S
https://www.jud2.ct.gov/crdockets/DocketNoEntry.aspx?source=Pend (last visited Sept. 24,
2025). Bibiloni entered the DOC on February 1, 2024, Compl. 2, ECF No. 1, and has since been
released from DOC custody, see Not. of Change of Address, ECF No. 62.

Acheampong[3] (collectively, "Defendants") in their individual capacities.  Initial Review Order ("IRO"), at 11, ECF No. 20.[4]

In response to Bibiloni's Complaint, Defendants Stephanie and Jones have filed a Motion to Dismiss, ECF No. 31, and Defendant Acheampong has also filed a Motion to Dismiss, ECF No. 54. Bibiloni has filed a Motion to Add Attachments, containing additional Inmate Request Forms he asserts he filed while at New Haven CC. ECF No. 48. For the reasons set forth below: (1) Defendants Stephanie's and Jones' Motion to Dismiss, ECF No. 31, is DENIED; (2) Plaintiff's Motion to Add Attachments is DENIED as moot, ECF No. 48; and (3) Defendant Acheampong's Motion to Dismiss, ECF No. 54, is DENIED.

## I.    BACKGROUND

### A.    Factual Background

I accept the following allegations in Bibiloni's complaint as true for purposes of deciding the Motions to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I include only those facts relevant to Bibiloni's Eighth Amendment deliberate indifference claims and state law claims relating to his gunshot wound.

On July 8, 2023, Bibiloni suffered a gunshot wound near his groin, and he "self treated and self medicated in fear of going to the hospital" and/or "reporting anything to the law."

---

[3] Defendant Acheampong was originally named as a John Doe Defendant. However, Bibiloni subsequently identified the John Doe Defendant as Dr. Kwame Acheampong. *See* Mot., ECF No. 25; *see also* Order, ECF No. 26.

[4] This case was transferred to me on January 6, 2025. ECF No. 28. The Honorable Vernon D. Oliver, U.S. District Judge, previously presided over this case.

Compl. ¶¶ 8-9, ECF No. 1.[5] On February 1, 2024, Bibiloni entered DOC custody at New Haven CC. *Id.* ¶¶ 3, 11. Upon entering DOC custody, during intake and screening, Bibiloni informed medical staff verbally about his gunshot wound, explained how he had self-treated it, and stated he was experiencing pain close to his groin area. *Id.* ¶ 11. According to the Complaint, medical staff did not take Bibiloni's gunshot wound seriously because he did not go to the hospital at the time he was shot. *Id.* He was sent back to the unit without proper treatment. *Id.* ¶ 12.

The Complaint alleges that in February 2024, Bibiloni wrote multiple requests complaining about his pain and how the constant climbing to the top bunk aggravated his pain. *Id.* ¶ 13. On February 29, 2024, Bibiloni submitted an Inmate Grievance Form stating: "I wrote to medical on 02/15[.] It's been very hard to get up onto a top bunk with my body having no energy[.] I came in 247 pounds with a bottom bunk pass. Was moved to east dorm with no pass. I've written to medical numerous times and haven't been seen, especially after C.O. Hester discharged an extinguisher in the unit." Ex. to Compl. 10, ECF 1.

On March 15, 2024, Bibiloni submitted an Inmate Request Form to medical stating: "You have me in another top bunk. I keep writing to medical because it is becoming harder and harder with a gunshot wound in my groin. Please have a doctor see my leg and wound soon." Ex. to Compl. 32. The Complaint alleges that after two months of "constant" writing and complaining, Bibiloni was called to the medical unit on April 18, 2024. Compl. ¶ 14. There, Bibiloni explained to medical that he had been experiencing pain, which was a lot worse

---

[5] Citations to the Complaint are by paragraph number. Exhibits appended to the Complaint, ECF No. 1, will be identified as "Ex. to Compl." Page citations to these exhibits and other documents are to the page number generated by the ECF system.

when he climbed to the top bunk. *Id.* He requested to get a bottom bunk pass, but nothing was done, and his problem was "ignored." *Id.* That same day, on April 18, 2024, a staff member responded to Bibiloni's March 15, 2024 Inmate Request stating, "seen at nurse sick call." Ex. to Compl. 32. Bibiloni continued to submit inmate requests complaining of groin pain, but his requests were ignored. Compl. ¶ 17.

The Complaint alleges that Defendant Jones stated that Bibiloni refused to go to medical, but Bibiloni never signed a refusal, nor did staff inform him of a medical visit. *See* Compl. ¶ 21.

On May 12, 2024, Bibiloni submitted an Inmate Request addressed to "Nurse Supervisor ONLY." Ex. to Compl. 22. In this Inmate Request, Bibiloni described how he had written many inmate requests in February of 2024 "due to a gunshot wound to [his] groin" but the requests had gone unanswered, and he advised that he was still having painful difficulties climbing up and down the top bunk, but he had not yet been given a bottom bunk pass. *Id.* He also stated that he received a request dated February 16, 2025 back with a response "refused sick call/no show" signed by a nurse on March 2, 2024. *Id.* However, Bibiloni stated that he never refused a medical visit, nor was he notified by anyone to go to medical. *Id.* Lastly, he emphasized that he had still not been seen by a physician for his gunshot wound to his groin. *Id.* On a separate page that appears to have been attached to the request form, Bibiloni wrote that it was "very painful to deal with getting up and down the TOP BUNK on a daily basis with the fear of falling and getting hurt due to said symptoms." *Id.* at 23. He requested to be seen by a physician immediately. *Id.* at 23. The grievance was stamped on May 13, 2024. *Id.* at 22.

On June 2, 2024, Bibiloni submitted a Health Services Administrative Remedy ("HSAR") regarding the "Nurse Supervisor and all medical personnel" stating, in summary, that he had submitted numerous requests to be seen by medical for a gunshot wound with no response, that he had been experiencing excruciating pain since entering New Haven CC because he had to climb up and down the top bunk, and that he needed to be seen immediately to obtain proper medical care and a bottom bunk pass. Ex. to Compl. 24.

On June 6, 2024, Bibiloni was seen by Defendant Acheampong. Compl. ¶ 23.[6]  The Complaint alleges that Bibiloni told Acheampong about his gunshot wound during this visit. *Id.* He was still experiencing pain from the gunshot wound at that time. *Id.* ¶ 25. Acheampong prescribed ibuprofen for Bibiloni's pain, but he refused to examine the gunshot wound because Bibiloni had "never" gone to the hospital after being shot. *Id.*

On the same day as Bibiloni's visit with Acheampong, June 6, 2024, Stephanie responded to Bibiloni's May 12, 2024 Inmate Request, which had complained about pain from the gunshot wound. Stephanie wrote: "You were seen on 6/6/24, for you [sic] incident with SOB due to the fire in Feb 2024. [A]t that time you were placed on the list to see the doctor. At the time you see the doctor you can discuss this issue as you did not mention it during your visit." *See* Ex. to Compl. 22.  The Complaint asserts that Defendant Stephanie claimed Bibiloni did not inform staff about his medical issue, but Bibiloni had multiple requests written to medical complaining about his gunshot wound. *Id.* ¶ 22.

---

[6] The Complaint references John Doe. As noted, Bibiloni has since identified John Doe as Kwame Acheampong.

Also on June 6, 2024, Jones appeared to respond to Bibiloni's June 2, 2024 HSAR stating (on a separate page) that the HSAR was rejected because no signature page was attached, and Bibiloni had been seen that same day for the issue noted so no further interventions were required. *See* Ex. to Compl. 25.

On July 2, 2024, Bibiloni submitted an Inmate Request Form to Jones and Stephanie stating:

> This response is addressed to Nurse Jones CSN. On 6/6/24 I was called down for sick call to finally be seen for the matters I've been requesting. On said date you addressed me about the grievances I filed regarding not being seen by medical. [Your] response says you replied 5/21/24 but no time or date stamps are on the responses. On 6/6/24 you showed me my grievances and stated you would be responding then to them, which should be on camera as well. . . . In regards to Stephanie's response, on 6/6/24 I was seen where Nurse Jones told me she would be responding to my grievances then (on camera). . . . I have been writing to medical, operations, and [lieutenants] to be seen and given a bottom bunk pass. . . . As far as the doctor seeing me, I was seen but no solution for my gunshot wound on my groin. The doctor stated because I took the bullet out myself and never went to the hospital there was nothing he can do. Never checked the wound, all I was given was ibuprofen for pain.

Ex. to Compl. 12-13. It is apparent from the Complaint that by July 27, 2024, Bibiloni was transferred to Corrigan Correctional Center ("Corrigan CC") as he notes in his Complaint that he continued to seek medical treatment as of that date at Corrigan. Compl. ¶ 28.

### B.    Procedural History

On October 3, 2024, Bibiloni filed his Complaint under 42 U.S.C. § 1983 against multiple defendants, including Defendants Stephanie, Jones, and a John Doe Defendant, now identified as Defendant Acheampong. *See* Compl., ECF No. 1. In relevant part, Bibiloni brought Eighth Amendment claims against Defendants Stephanie, Jones, and Acheampong for deliberate indifference to his medical needs, as well as state law claims for malpractice and negligence. *See id.* ¶¶ 4, 20, 26, 29, 44. In summary, Bibiloni alleged that, over a prolonged

period, he continually informed Stephanie and Jones that he was experiencing pain pertaining to a gunshot wound that he incurred prior to his incarceration. *Id.* ¶¶ 8-10, 11-14, 17, 19, 21-25, 27. Bibiloni claims that Stephanie and Jones ignored his requests to seek medical treatment, and that Acheampong refused to examine his gunshot wound even though he had expressed he was in pain. *See id.* ¶¶ 21-25. Bibiloni attached documents to his Complaint consisting of Inmate Requests, Health Services Administrative Remedies, Inmate Grievances and additional documents.[7] *Id.* at 8-47.

On October 8, 2024, Bibiloni filed an Amended Complaint, which attached documents. See ECF Nos. 12, 12-1. On October 21, 2024, Bibiloni filed another Amended Complaint, which also attached documents. *See* ECF Nos. 14, 14-1. The two Amended Complaints are identical to Bibiloni's initial Complaint, ECF No. 1. The documents attached to the original Complaint and the two Amended Complaints are also identical with two exceptions: (1) there are two pages attached to the second Amended Complaint relating to Bibiloni's IFP application that are not attached to the other versions of the complaint and (2) the Amended Complaints include some cover sheets for exhibits whereas cover sheets for these exhibits do not appear in the original Complaint.[8] On November 12, 2024, the Court issued an Initial Review Order on Bibiloni's original Complaint. IRO, ECF No. 20.

---

[7] Some of the attached documents relate to claims that were previously dismissed. *See* IRO, ECF No. 20. I will review only those Inmate Requests, Inmate Grievances, and Health Services Administrative Remedies that are relevant to Bibiloni's deliberate indifference claims relating to the gunshot wound while he was incarcerated at New Haven CC.

[8] These pages include a certification from Bibiloni relating to his Inmate Trust Account and a copy of an Order from the Court seeking additional information about Bibiloni's financial circumstances. *See* ECF No. 14-1, at 1-2.

The Court allowed Bibiloni's Complaint to proceed against Defendants Stephanie, Jones, and the John Doe Defendant, now known as Defendant Acheampong, in their individual capacities, on his Eighth Amendment claims for deliberate indifference to his medical needs and state law claims for malpractice and negligence. *Id.* at 11. The Court dismissed all remaining claims, all defendants in their official capacities, and all remaining defendants in their individual capacities. *Id.*

After initial review, Defendants Stephanie and Jones were served with Bibiloni's original Complaint. *See* Order, ECF No. 24.

On December 13, 2024, Bibiloni identified the John Doe Defendant as Defendant Acheampong, *see* Mot., ECF No. 25; Order, ECF No. 26, and Acheampong was subsequently served, *see* ECF No. 47. On January 29, 2025, Jones and Stephanie filed their Motion to Dismiss, ECF No. 31, and a Memorandum in Support, ECF No. 31-1 ("Defs.' Mem."), on the grounds that Bibiloni's Eighth Amendment deliberate indifference claims against them relating to his gunshot wound fail to state a claim and they are shielded from liability on Bibiloni's state law claims for negligence and/or medical malpractice under Connecticut General Statutes. *See id.* at 1.

On March 19, 2025, Bibiloni filed a Motion to Add Attachments containing additional Inmate Request Forms he asserts he filed while at New Haven CC. *See* Mot. to Add Attachs., ECF No. 48. On March 25, 2025, Bibiloni filed his Memorandum in Opposition to Defendants Stephanie's and Jones' Motion to Dismiss. *See* ECF No. 52.

On April 22, 2025, Acheampong filed a Motion to Dismiss, ECF No. 54, and Memorandum of Law, ECF No. 54-1 ("Def.'s Mem."), urging dismissal on the ground that Bibiloni's Complaint fails to state a plausible Eighth Amendment claim. *See* ECF No. 54-1 at

1, 4-5. Acheampong also filed various Inmate Requests and Grievances, ECF No. 54-3, as well as a Motion to Seal Bibiloni's medical records, ECF No. 53, to be used in support of his Motion to Dismiss. I granted Acheampong's Motion to Seal the medical records, ECF No. 64, and the medical records were filed, ECF No. 65. On June 26, 2025, Bibiloni filed a Memorandum in Opposition to Acheampong's Motion to Dismiss. ECF No. 61 ("Pl.'s Opp.").

Because the Court's Initial Review Order allowed Bibiloni's original Complaint to proceed to service—and Bibiloni's amended complaints were filed before service of that original Complaint—I consider the original Complaint to be the operative Complaint. Although the Motions to Dismiss filed by Defendants cite to Bibiloni's Amended Complaints,[9] the Amended Complaints and their attachments are identical to the original Complaint in all relevant respects.[10]

## II.    LEGAL STANDARD AND CONSIDERATION OF MATERIALS OUTSIDE THE COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[9] The Motion to Dismiss filed by Jones and Stephanie references the second Amended Complaint, ECF No. 14. *See* Defs.' Mem. 1, ECF No. 31-1. The Motion to Dismiss filed by Acheampong references the first Amended Complaint, ECF No. 12. *See* Def.'s Mem. 2 n.1, ECF No. 54-1.

[10] As noted, *supra* note 9, the only difference in the attachments among the complaints is that (1) the second Amended Complaint attaches two pages relating to Bibiloni's IFP status that are not attached to the original Complaint or the first Amended Complaint and (2) some cover sheets for exhibits attached to the Amended Complaint do not appear in the original Complaint's attachments. These pages are not relevant to the Motions to Dismiss.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d. Cir. 2015). It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Id.* (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 570).

When considering a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted). "Generally, [however] in determining whether a complaint states a claim, the court is required to make the assessment based solely on the allegations in the complaint, without considering extraneous facts and materials." *Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025). "[E]xtraneous materials do not become integral parts of the complaint unless the plaintiff relied on them in drafting the complaint." *Id.*

If a document outside of the complaint is to form the basis for dismissal, however, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). A plaintiff must have "actual notice" of the materials to be considered by a court in its evaluation of the legal sufficiency of the complaint. *See Chambers*, 282 F.3d at 153. Therefore, a court may consider material extrinsic to the complaint in evaluating a motion to dismiss only when the extrinsic material is "either in [the] plaintiff['s] possession" or is material "of which [the] plaintiff[] had knowledge and relied on in bringing suit." *Id.* (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

Here, Acheampong has submitted Bibiloni's sealed medical records in support of his Motion to Dismiss. ECF No. 65. Acheampong argues that I should consider Bibiloni's medical

records because Bibiloni's "Complaint repeatedly references his medical records, medical appointments, and grievances related thereto, and [Bibiloni] even attached numerous grievances referencing and discussing his medical care." Def.'s Mem. 2 n.1, ECF No. 54-1. In support of his argument, he states that Bibiloni's medical records are deemed to have been incorporated into Bibiloni's Complaint by reference, or, alternatively, that I may consider Bibiloni's medical records because his Complaint relies heavily upon the medical records, which renders the medical records integral to the Complaint. *Id.*

Although Bibiloni's claim against Acheampong relates to Acheampong's alleged deliberate indifference to Bibiloni's serious medical needs, namely, his gunshot wound, Bibiloni does not reference his medical records in his Complaint, nor does he rely on his medical records to set forth his allegations. *See* Compl.; *see also Galvez v. Westchester Cnty.*, No. 19 CV 3630 (VB), 2020 WL 2731997, at *2-3 (S.D.N.Y. May 26, 2020) (declining to consider defendants' submission of plaintiff's medical records on motion to dismiss deliberate indifference claim because plaintiff did not rely on the records and the records were not incorporated into complaint); *see also Smith v. Carpenter*, 316 F.3d 178, 188 n.14 (2d Cir. 2003) (referencing *Gutierrez v. Peters*, 111 F.3d 1364, 1372 n.7 (7th Cir. 1997) (cautioning that "the 'seriousness' determination [in Eighth Amendment denial of medical care cases] will often be ill-suited for resolution at the pleading stage and will have to await summary judgment proceedings, at which point a fully developed medical record will inform the court as to the nature of the inmate's condition").

Acheampong's Memorandum in support of his Motion to Dismiss relies on Bibiloni's medical records to contradict Bibiloni's statements in the Complaint about what Bibiloni conveyed to medical staff at various appointments. Def.'s Mem. 2-3. In addition, the

Memorandum discusses an appointment with Acheampong that the Complaint does not reference at all. *See id.* at 2-3, 7-8. Thus, the Memorandum urges a decision based on facts outside the Complaint or its attachments. I will not consider Bibiloni's medical records because Bibiloni has not incorporated his medical records by reference into his Complaint, and Bibiloni's medical records contain descriptions and notes that conflict with allegations in the Complaint. *See Davis v. McCready*, 283 F. Supp. 3d 108, 118 (S.D.N.Y. 2017) (declining to consider plaintiff's medical records submitted by defendant in support of motion to dismiss because, among other reasons, there was a dispute over the accuracy of the medical record). At the summary judgment stage of this litigation, Acheampong may submit Bibiloni's medical records for consideration, but I will not consider the medical records at the initial pleading stage of litigation.

## III.    <u>DISCUSSION</u>

Stephanie and Jones argue that Bibiloni failed to plead that Jones had "actual knowledge" that Bibiloni faced a risk of harm from a gunshot wound and that both Jones' and Stephanie's involvement was limited to responding to administrative remedy requests and ensuring Bibiloni's placement on the physician "sick call list," which cannot amount to deliberate indifference. *See* Defs.' Mem. 8, ECF No. 31-1. Acheampong argues that Bibiloni's gunshot wound did not constitute a sufficiently serious medical need and that at most, Bibiloni's claim amounts to a mere disagreement in treatment, not deliberate indifference. *See* Def.'s Mem. 5-6, 8, ECF No. 54-1. I conclude that, accepting all of Bibiloni's allegations in his Complaint as true, Bibiloni has adequately alleged that Jones, Stephanie, and Acheampong were deliberately indifferent to his medical needs in violation of the Eighth Amendment for purposes of surviving the Motions to Dismiss.

The Supreme Court has held that deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). There is a subjective and an objective component to an Eighth Amendment claim for deliberate indifference. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

To establish the objective component of an Eighth Amendment violation, the alleged deprivation of medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The Second Circuit has identified several non-exhaustive factors relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).

If the prisoner's claim arises from an unreasonable delay in treatment or a challenge to the kind of treatment received, the seriousness inquiry focuses on the challenged delay or treatment "rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702). A sufficiently serious medical condition exists when, if left untreated, it could "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (citation omitted).

To satisfy the subjective component of the Eighth Amendment's deliberate indifference standard, a defendant must have been actually aware of a substantial risk that the incarcerated

individual would suffer serious harm because of his or her actions or inactions. *See Salahuddin*, 467 F.3d at 280. Deliberate indifference is more than mere negligence—it is equivalent to "criminal recklessness," where an individual "disregards a risk of harm of which he is aware." *See Farmer v. Brennan*, 511 U.S. 825, 837, 840 (1994). In general, medical malpractice does not suffice for deliberate indifference. *Estelle*, 429 U.S. at 106. Medical malpractice, may, however, rise to deliberate indifference if it "involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices." *Salahuddin*, 467 F.3d at 280.

"The state of the defendant's knowledge is normally a question of fact to be determined after trial." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). "Although *Farmer* requires that a plaintiff prove actual knowledge of a risk, evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (citing *Farmer*, 511 U.S. at 842); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."); *Hudak v. Miller*, 28 F. Supp. 2d 827, 831 (S.D.N.Y. 1998) (Sotomayor, J.) ("[I]f the evidence shows that the risk of serious medical problems was so obvious that a reasonable factfinder could infer actual knowledge of them on [defendant's] part, this Court must deny summary judgment."); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("Evidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact

finder to conclude that the defendant was actually aware of the risk."); *Bardo v. Wright*, No. 3:17-cv-1430 (JBA), 2019 WL 5864820, at *7 (D. Conn. Nov. 8, 2019) (concluding that "the record, taken in the light most favorable to Plaintiff, permits the inference that the risk of skin cancer was sufficiently obvious that [the defendant doctor] must have had actual awareness of it").

It is well established that "[a] prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (citing *Estelle*, 429 U.S. at 106–07). A medical provider may, however, act with deliberate indifference by consciously providing an individual with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives, such as improper monetary incentive. *Chance*, 143 F.3d at 703–04; *see also Braham v. Perelmuter*, No. 3:15-cv-1094 (JCH), 2017 WL 3222532, at *16-17 (D. Conn. July 28, 2017) (denying motion for summary judgment because a reasonable juror could infer that the defendant-dentist had chosen an easier but less effective treatment by extracting several of the plaintiff's teeth rather than trying to restore them). "Deliberate indifference may also be inferred where treatment was cursory or evidenced apathy." *Bardo*, 2019 WL 5864820, at *6 (internal quotation marks omitted); *see also Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994) ("A jury could infer deliberate indifference from the fact that [defendant] knew the extent of [plaintiff's] pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [plaintiff's] situation.").

Here, Bibiloni has alleged that, from February 1, 2024, when he was first admitted to New Haven CC, until July 2024, when he transferred to Corrigan CC, he experienced pain from his gunshot wound, especially when attempting to climb to his top bunk. *See* Compl. ¶

16

11; *see also* Ex. to Compl. 12-13, 22. For the purposes of this Opinion, I construe the alleged facts most favorably to Bibiloni and consider his allegations sufficient to satisfy the objective element of his Eighth Amendment deliberate indifference claims.

### A.    Defendants Jones and Stephanie

At this juncture, accepting Bibiloni's allegations as true, he has also sufficiently alleged the subjective element of his deliberate indifference claims as to Defendants Stephanie and Jones. Even assuming that Jones and Stephanie were not aware of Bibiloni's gunshot wound until May 2024, Bibiloni has sufficiently pleaded facts to demonstrate that Jones and Stephanie were aware of the pain that he was experiencing from his gunshot wound and failed to ensure that Bibiloni promptly saw a physician—thereby causing Bibiloni to experience pain from his gunshot wound for a substantial period of time. *See Dixon v. Lupis*, No. 20-cv-1754 (VLB), 2022 WL 4598857, at *3 (D. Conn. Sept. 30, 2022) (denying motion to dismiss deliberate indifference claim against warden where warden "knew Plaintiff was engaging in the process of raising medical grievances and did nothing to address the failure to respond"); *Lewis v. Cunningham*, 2011 WL 1219287, at *7 (S.D.N.Y. Mar. 14, 2011) (stating that "an administrator may be considered personally involved if he ignores a grievance pertaining to a matter within the scope of his responsibilities").

Bibiloni argues in his opposition that he experienced ongoing pain and complications from an untreated gunshot wound, warranting medical intervention, and that Stephanie and Jones failed to ensure he received prompt treatment by delaying a physician's consultation, despite his repeated requests from February 2024 through June 2024. *See* Pl.'s Opp. 1, ECF No. 52. He asserts that even though he saw a physician in June 2024, a delay in medical treatment that exacerbates pain or risk of serious harm constitutes deliberate indifference. *Id.*

at 2; *see also Laster v. Mancini*, No. 07 Civ.8265 (DAB), 2013 WL 5405468, at *21 (S.D.N.Y. Sept. 25, 2013) ("Courts have declined to dismiss deliberate-indifference claims as a matter of law where plaintiffs have alleged a delay in medical treatment causing substantial pain, even when the injuries alleged were not life-threatening and the delay was relatively brief.").

Accordingly, I conclude that Bibiloni has sufficiently pleaded that Stephanie and Jones were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[11]

### B.    Defendant Acheampong

Accepting Bibiloni's allegations as true, I conclude he has also sufficiently pleaded the subjective element of his deliberate indifference claim as to Defendant Acheampong. *See Upson v. Wilson*, No. 918-CV-1149 (LEK/CFH), 2020 WL 6530782, at *9 (N.D.N.Y. July 23, 2020), Recommended Ruling Adopted, 2020 WL 5544200 (N.D.N.Y. Sept. 16, 2020) (concluding plaintiff's complaint was sufficient to plausibly allege "the culpable mental state necessary to satisfy the subjective element of a deliberate indifference claim" but noting that a fuller record of the decisions made by nurse defendant may demonstrate plaintiff's Eighth Amendment claim "is nothing more than a disagreement over the course of medical treatment that he received").

The Complaint alleges that when Bibiloni's saw Acheampong on June 6, 2024, Bibiloni told him about his gunshot wound and how he was experiencing pain. Compl. ¶¶ 23, 25. Bibiloni also alleges that Acheampong prescribed ibuprofen for Bibiloni's pain, but he refused

---

[11] Because I conclude that Bibiloni has sufficiently pleaded his Eighth Amendment deliberate indifference claims, I will allow his state law claims to proceed in accordance with the court's Initial Review Order, ECF No. 20, and I will address the validity of Bibiloni's state law claims in the usual course by way of a motion for summary judgment.

to examine the gunshot wound because Bibiloni had not gone to the hospital when he was shot. *Id.* ¶ 25. Moreover, in Bibiloni's July 2, 2024 Inmate Request, he states that he still had "no solution" for his gunshot wound, even after seeing Acheampong. Ex. to Compl. 12-13. At the initial pleading stage, the allegations in the Complaint are sufficient to raise an inference that Acheampong was aware of the pain that Bibiloni was experiencing from his gunshot wound but failed to examine his gunshot wound—instead chose to solely prescribe ibuprofen, an easier and less efficacious treatment. *See Davis v. McCready*, 283 F. Supp. 3d 108, 122-23 (S.D.N.Y. 2017) (denying defendant physician assistant's motion to dismiss plaintiff's deliberate indifference claim where plaintiff alleged that defendant provided only a cane even after plaintiff informed defendant of excruciating pain he experienced in his back and leg due to gunshot wounds and resulting nerve damage).

Accordingly, I conclude that Bibiloni has sufficiently pleaded that Acheampong demonstrated deliberate indifference regarding Bibiloni's serious medical needs in violation of the Eighth Amendment.

As a final matter, I deny as moot Bibiloni's Motion to Add Attachments, ECF No. 48, because the exhibits he provided were not utilized when reciting his factual allegations nor were they determinative of my assessment of Defendants' Motions to Dismiss. Bibiloni may choose to refile his attachments in support of his claims if this case reaches the summary judgment stage of the litigation.

## IV.  **<u>CONCLUSION</u>**

For the foregoing reasons: (1) Defendants Stephanie's and Jones' Motion to Dismiss, ECF No. 31, is **DENIED**; (2) Plaintiff's Motion to Add Attachments is **DENIED** as moot, ECF No. 48; and (3) Defendant Acheampong's Motion to Dismiss, ECF No. 54, is **DENIED**

**SO ORDERED.**

New Haven, Connecticut
September 26, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge